UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Erik Mercado Arechiga,

Petitioner

v.

Gregory J. Archambeault and Michael Bernacke,

Respondents

Case No. 2:23-cv-00600-CDS-VCF

**Order Granting in Part Petition for Writ of Habeas Corpus, Ordering a Prompt Bond Hearing, and Denying as Moot Motion for Show-Cause Order**

[ECF Nos. 1, 18]

Erik Mercado Arechiga is a citizen of Mexico and has been detained in the United States for nearly 43 months. Now represented by counsel, he petitions for a writ of habeas corpus, seeking either his immediate release or a prompt bond hearing before a neutral adjudicator. Pet., ECF No. 1 at 7–8. Arechiga urges that his rights under the Fifth and Eighth Amendments are being violated by his prolonged and indefinite detention, first in California and now in Nevada. Additionally, he moves for an order to show cause why his petition should not be granted. Mot., ECF No. 18. The respondents are Gregory J. Archambeault—the San Diego Field Office Director for Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO)—and Michael Bernacke—the Salt Lake City equivalent. They seek the denial of Arechiga's petition, arguing broadly that non-citizens like Arechiga "have no rights" under the Constitution and are entitled only to those rights expressly provided by statute. Answer, ECF No. 21 at 2. Seemingly in response to Arechiga's motion for a show-cause order, the respondents provide substantive argument as to why Arechiga's petition itself should be denied, rather than directly addressing the propriety of a potential show-cause order.[1] Resp. Br., ECF No. 19.[2]

---

[1] I construe the respondents' brief (ECF No. 19) as their response to the show-cause order that Arechiga seeks (ECF No. 18), as they seem to have skipped a step in failing to respond to the motion seeking a show-cause order itself.

[2] The response brief and answer are identical. *Compare* ECF No. 19 *with* ECF No. 21. Because I deny as moot Arechiga's motion for a show-cause order—as the respondents' brief obviates the need for one—I cite only to the respondents' answer (ECF No. 21) but refer to it interchangeably as their "response."

There is no controlling precedent as to whether non-citizens detained for a prolonged, indefinite time under 8 U.S.C. § 1225(b), like Arechiga, have a due-process right to a bond hearing. But I join district courts from across the country and find that under these circumstances, Arechiga is entitled to a bond hearing in front of a neutral adjudicator. At that hearing, the Government will bear the burden of establishing by clear and convincing evidence that Arechiga is a flight risk or a danger to the community. The respondents must arrange a bond hearing for Arechiga within 21 days of this order; their failure to do so may result in Arechiga's release.

I.   Background

Arechiga[3] is a Mexican citizen. ECF No. 1 at 2. On January 4, 2020, he was detained as an arriving alien by ICE at the San Ysidro Port of Entry in California, where he sought asylum.[4] *Id.* at 3. On February 14, 2020, an asylum officer conducted a credible-fear interview and determined that Arechiga had a credible fear of torture if he were to return to Mexico. *Id.* at 3, 5. A supervisor approved the determination on March 9, 2020. *Id.* at 5. On March 20, 2020, ICE commenced removal proceedings against Arechiga as a removable alien lacking a valid visa under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* On December 17, 2020, an immigration judge (IJ) at the Otay Mesa Immigration Court denied Arechiga's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).[5] *Id.* And the IJ ordered Arechiga's removal from the United States. *Id.* The Board of Immigration Appeals (BIA) upheld the removal order on May 28, 2021. *Id.*

---

[3] His Department of Homeland Security identification number is A075-486-845. ECF No. 1 at 2.

[4] Arechiga was initially detained at the Otay Mesa Detention Center in San Diego, California, and was later moved to the Imperial Regional Detention Facility in Calexico, California. *Id.* at 2. On November 6, 2022, Arechiga was transferred to the Nye County Detention Center in Pahrump, Nevada, where he is now. *Id.* at 2. He brought his petition in November 2022 in the Southern District of California, and the case was transferred to this court in April 2023.

[5] Arechiga made these applications under 8 U.S.C. § 1158, 8 U.S.C. § 1231(b)(3), and 8 C.F.R. § 1208.16(c) respectively. ECF No. 1 at 5.

2

1    Arechiga appealed the BIA's decision to the Ninth Circuit, which stayed the removal
2 order. *Id.* at 2. Oral argument was held on February 15, 2023. The Ninth Circuit then granted in
3 part Arechiga's petition, concluding that the IJ and BIA abused their discretion in finding that
4 Arechiga committed a particularly serious crime (PSC) without considering "the circumstances
5 and underlying facts of the conviction." *Mercado Arechiga v. Garland*, 2023 WL 2344228, at *1 (9th
6 Cir. Mar. 3, 2023) (quoting *Bare v. Barr*, 975 F.3d 952, 961 (9th Cir. 2020) (citation omitted)).[6]
7 The Ninth Circuit remanded that portion of Arechiga's petition to the BIA for analysis under the
8 proper standard. *Id.* (citing *Flores-Vega v. Barr*, 932 F.3d 878, 884–86 (9th Cir. 2019)). Arechiga's
9 case is currently pending before the BIA, and its determination will affect whether he may seek
10 asylum and withholding of removal. Traverse, ECF No. 22 at 7, 9.

## II. Discussion

12    "The Supreme Court and the Ninth Circuit have long 'grappled in piece-meal fashion
13 with whether the various immigration detention statutes may authorize indefinite or prolonged
14 detention of detainees and, if so, may do so without providing a bond hearing.'" *Diaz v. Becerra*,
15 2023 WL 3237421, at *4 (N.D. Cal. May 2, 2023) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1114
16 (9th Cir. 2010)). But by and large, "[i]n general, as detention continues past a year, courts
17 become extremely wary of permitting continued custody absent a bond hearing." *Sibomana v.*
18 *LaRose*, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) (quoting *Gonzalez v. Bonnar*, 2019 WL
19 330906, at *3 (N.D. Cal. Jan. 25, 2019) (cleaned up)). "[A]s the period of confinement grows, so
20 do the required procedural protections no matter what level of due process may have been
21 sufficient at the moment of initial detention." *Hong v. Mayorkas*, 2022 WL 1078627, at *5 (W.D.
22 Wash. Apr. 11, 2022) *appeal dismissed sub nom. Yang v. Mayorkas*, 2022 WL 4127534 (9th Cir. Sept. 6,

---

[6] The Ninth Circuit also dismissed in part and denied in part Arechiga's petition on other grounds. *Arechiga*, 2023 WL 2344228, at *2. The court dismissed in part the petition after concluding that it lacked jurisdiction over some portions of it because Arechiga failed to argue certain issues to the BIA. *Id.* The court also denied in part the petition as to Arechiga's expert witness, who did not attend the BIA hearing, despite two continuances and several calls from the IJ—which the court concluded was sufficient for due process. *Id.*

2022) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir. 2010)). Many "district courts around the country have agreed that mandatory detention pending completion of removal proceedings 'without a bond hearing, will—at some point—violate the right to due process.'" *Id.* at *3 (collecting cases).

The parties do not dispute that Arechiga was initially detained—and is still being held—under 8 U.S.C. § 1225(b), which is the statute governing expedited removal and mandatory detention of arriving aliens. *Id.* at 2; ECF No. 21 at 4, 7–8.[7] If an asylum officer assesses "that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). The statute "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 138 S. Ct. 830, 845 (2018). Importantly, the statute does not "say[] anything whatsoever about bond hearings." *Id.* at 842. Arechiga asserts that he has been detained for nearly 43 months without receiving a bond hearing, at which an IJ would determine whether the Government can meet its burden of proving by clear and convincing evidence that Arechiga's continued detention is justified. ECF No. 18 at 2; ECF No. 22 at 12. Arechiga does not argue that he is statutorily entitled to a bond hearing. Rather, he urges that his prolonged detention violates his rights under the Fifth Amendment due-process clause and the Eighth Amendment's excessive-bail prohibition. *See generally* ECF No. 22. The respondents rely on recent caselaw from the Ninth Circuit and the Supreme Court for their position that Arechiga "does not have any constitutional rights." ECF No. 21 at 2–3, 7–15. And in his traverse (which is also his reply in support of his motion for a show-cause order), Arechiga cites district-court cases from throughout the Ninth Circuit and across the country with similar factual

---

[7] A similar statute, 8 U.S.C. § 1226, applies to non-citizens who are already in the United States at the time of their detention, and has likewise been the subject of much litigation. A great deal of the jurisprudence in this realm of immigration law addresses bond hearings as applied to § 1226 applicants, who are distinct from those seeking entry to the United States under § 1225. Unless noted otherwise, the caselaw I rely on throughout this order—for comparison to Arechiga's case—is related to non-citizens detained under § 1225.

scenarios to his own situation, in support of his position that due process entitles him to a bond hearing. *See generally* ECF No. 22.[8]

The respondents misread the authority on which they rely. First, they point to the Supreme Court's decision in *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020). They insist that under this case, Arechiga is not entitled to a bond hearing because non-citizens like him are permitted only what is granted to them by Congress via statute. ECF No. 21 at 8. But Arechiga does not assert that he is due a bond hearing under any statute—rather, he relies on the Fifth Amendment due-process clause of the Constitution. The respondents also cite *Mendoza-Linares v. Garland* for the proposition that "any rights [a noncitizen seeking initial entry] may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause." *Id.* at 11 (quoting *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022)). Again, the respondents miss the mark. Arechiga's case involves a vastly different challenge than those of the petitioners in *Mendoza-Linares* or *Thuraissigiam*. At present, Arechiga is not challenging the (now-stayed) removal order against him (i.e., whether he will ultimately be removed from or admitted to the United States)—as was Mendoza-Linares. *See Mendoza-Linares*, 51 F.4th at 1146 (holding that an arriving immigrant has no constitutional due-process rights to challenge an IJ's denial of his application for asylum, after he was denied the ability to appeal the denial to the BIA). Nor is Arechiga seeking "to obtain administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." *Thuraissigiam*, 140 S. Ct. at 1963. He seeks a bond hearing to determine whether

---

[8] Ordinarily, courts do not consider issues raised for the first time in a reply brief, as the opposing party is deprived of the opportunity to address them. *See U.S. v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993). But district courts have discretion to consider an issue "even if it was raised in a reply brief" (*Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2001)) if, as here, the opposing party raises the issue in its own brief. *Bohn*, 956 F.2d at 209 (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). I caution Arechiga's counsel that it is generally improper to provide legal argument on issues for the first time in a reply brief. Indeed, Arechiga's petition itself and the motion are bereft of citations to or reliance on legal authority. But because the respondents raise a number of legal issues related to the application of 8 U.S.C. § 1225(b) in their answer to Arechiga's petition (ECF No. 21), I nonetheless entertain Arechiga's argument and cited legal authority and address them in this order.

1 the Government has sufficient reason to continue to detain him—rather than release him on
2 bail—pending the remainder of his asylum proceedings. Indeed, the phrase "bond hearing"
3 appears nowhere in *Mendoza-Linares* or *Thuraissigiam*.

4       The heart of Arechiga's request involves "[t]he dispositive inquiry [of] whether the Due
5 Process Clause compels a non-statutory avenue of release—here, a bond hearing—for
6 noncitizens subjected to prolonged detention pursuant to section 1225(b)(1)." *Hong*, 2022 WL
7 1078627, at *7; *see also id.* at *3 ("But the fact that [petitioner] is not *statutorily* entitled to a bond
8 hearing does not resolve his habeas claim. Although 'detention during deportation proceedings
9 [is] a constitutionally valid aspect of the deportation process,' *Demore v. Kim*, 538 U.S. 510, 523
10 (2003), such detention must still comport with due process." (citations omitted)). Although the
11 Ninth Circuit and Supreme Court have thus far been silent about non-citizens' entitlement to
12 bond hearings after prolonged detention, "the majority of courts across the country . . . [have]
13 conclud[ed] that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an
14 individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772–73
15 (S.D. Cal. 2020) (citing *Yagao v. Figueroa*, 2019 WL 1429582, at *2 (S.D. Cal. Mar. 29, 2019)
16 ("[T]he [c]ourt agrees with the many district courts finding that prolonged detention without a
17 bond hearing likely violates due process.")). Arechiga points to a number of them. ECF No. 22 at
18 3–4 (citing *Kydyrali*, 499 F. Supp. 3d at 768 (detention for 20 months without bond hearing
19 violated due process); *Leke v. Holt*, 521 F. Supp. 3d 597, 605 (E.D. Va. 2021) (detention for 24
20 months without bond hearing violated due process); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851
21 (E.D. Va. 2020) (detention for 22 months without bond hearing violated due process); *Djelassi v.
22 ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (detention for 18 months
23 without bond hearing violated due process); *Hong*, 2022 WL 1078627, at *1 (detention for nearly
24 30 months without bond hearing violated due process). In each of these cases, the petitioners
25 had been detained for *less* time than Arechiga. And in each, a district court judge determined that
26

the arriving alien was entitled to a bond hearing under the Fifth Amendment.[9] The same is true for Arechiga here.

In the absence of binding authority on this issue, I look to the decisions of the many district courts that have addressed it. *See supra* pp. 4, 6. Last year, a judge in the Western District of Washington applied the six-factor test from *Banda v. McAleenan* to assess a petitioner's entitlement to a bond hearing. *Hong*, 2022 WL 1078627, at *2 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019)). The *Hong* judge concluded that the *Banda* test is appropriate in conducting this assessment. *Id.* at *3–7. I find that reasoning persuasive and adopt it here. "Under *Banda*, a court evaluates: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the Government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at *5 (citing *Banda*, 385 F. Supp. 3d at 1106). The length of detention is considered "the most important factor." *Id.* (quoting *Martinez v. Clark*, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019) (citing *Sajous v. Decker*, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

Arechiga has been detained since January 4, 2020, amounting to nearly 43 months. ECF No. 1 at 2; ECF No. 22 at 9. This is longer than any petitioner was detained without a bond hearing in the similar cases I have located. *See supra* p. 7. In *Prieto-Romero v. Clark*—a case involving a petitioner being detained under the statute applying to aliens already *in* the United States, 8 U.S.C. § 1226—the Ninth Circuit observed that the petitioner's "three-year detention certainly qualifies as prolonged by any measure." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008). Arechiga has been detained for more than three-and-a-half years. By the *Prieto-Romero*

---

[9] I acknowledge that this line of cases was decided before *Mendoza-Linares*, and one of the cases (*Djelassi*, 434 F. Supp. 3d at 917) was decided before *Thuraissigiam*. Of the four decided after *Thuraissigiam*, two discuss it and both reject its application to non-citizens seeking bond hearings after prolonged detention. *Mbalivoto*, 527 F. Supp. 3d at 838; *Leke*, 521 F. Supp. 3d at 604 ("Quite clearly, *Thuraissigiam* does not govern here, as the Supreme Court there addressed the singular issue of judicial review of credible fear determinations and did not decide the issue of an [IJ]'s review of prolonged and indefinite detention.").

measure or any other, Arechiga has undoubtedly been detained for a prolonged period. This factor, the most important one, weighs heavily in Arechiga's favor.

The second factor—"the anticipated duration of all removal proceedings including administrative and judicial appeals"—likewise tips in Arechiga's direction. *Martinez*, 2019 WL 5968089, at *9. As the *Hong* court recognized, "appeals pend in the Ninth Circuit for 12 to 20 months before oral argument, and then an additional three months to a year after oral argument before a decision is issued." *Hong*, 2022 WL 1078627, at *7 (citing *Alejandro-Bernabe v. Barr*, 2021 WL 247871, at *3 (W.D. Wash. Jan. 4, 2021)); *Katlong v. Barr*, 2020 WL 7048530, at *3 (W.D. Wash. Oct. 30, 2020); *Martinez*, 2019 WL 5968089, at *7. Arechiga successfully appealed to the Ninth Circuit part of the BIA's decision on his petition, and the case is now pending resolution on remand with the BIA. ECF No. 22 at 9. It is anyone's guess how long it will take the BIA to reconsider his petition on remand or how long subsequent appeals of that decision might take.

The record lacks sufficient information about the third, fourth, and fifth *Banda* factors, so I decline to address them. They neither weigh for nor against Arechiga. I also decline to speculate as to the sixth factor—whether the removal proceedings will eventually result in a final order of Arechiga's removal. The asylum officer found that Arechiga had a credible fear of torture if he were to return to Mexico. ECF No. 1 at 3, 5. And the Ninth Circuit concluded that the IJ and BIA abused their discretion in finding that Arechiga committed a PSC without considering "the circumstances and underlying facts of the conviction." *Mercado Arechiga*, 2023 WL 2344228, at *1. But it is unclear whether Arechiga will ultimately be removed from the United States. This factor is likewise neutral and weighs neither for nor against Arechiga.

With the first two *Banda* factors—including the most important—tipping the scale in favor of Arechiga, he is entitled to a prompt bond hearing in front of an IJ. Like in *Hong*, none of the factors weigh in the respondents' favor. *See Hong*, 2022 WL 1078627, at *7. As the Supreme Court stated in one of the very cases the respondents rely on, "[m]ore than a century of precedent" establishes that "the decisions of executive or administrative officers, acting within

powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 140 S. Ct. at 1982 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). But there was no such decision here. No executive or administrative officer has decided that Arechiga is *not* entitled to a bond hearing to determine whether the Government can continue to detain him until "the completion of applicable proceedings." *Jennings*, 138 S. Ct. at 845. "Congress is entitled to set the conditions for an alien's lawful entry into this country and . . . an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Thuraissigiam*, 140 S. Ct. at 1964 (citing *Nishimura Ekiu*, 142 U.S. at 660). But Arechiga is not on that threshold. He is languishing in a detention center with "no end in sight," and the Due Process Clause entitles him to a prompt bond hearing, despite his lacking U.S. citizenship. *See Leke*, 521 F. Supp. 3d at 601–03, n.8 (relying on the 5th Amendment Due Process Clause, granting bond hearing to petitioner who had been detained for 24 months under 8 U.S.C. § 1225(b), and classifying his detention as "prolonged" and having "no clear end in sight") (collecting cases).[10]

### III.     Conclusion

IT IS THEREFORE ORDERED that Arechiga's motion for an order to show cause **[ECF No. 18] is DENIED as moot**.

IT IS FURTHER ORDERED that Arechiga's petition for a writ of habeas corpus **[ECF No. 1] is GRANTED in part and DENIED in part**. The respondents must arrange a prompt bond hearing for Arechiga in front of an Immigration Judge within 21 days of this order. Their failure to do so may result in Arechiga's release.

IT IS FURTHER ORDERED that the parties must file a joint status report informing the court of the current status of the case and any relevant updates by **Friday, September 1, 2023**.

DATED: August 11, 2023

_____
Cristina D. Silva
United States District Judge

---

[10] Because Arechiga is entitled to a bond hearing under the Due Process Clause, I need not and do not reach his Eighth Amendment argument.